UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNIE TYRELL JOHNSON, Jr., # 296436,

       Petitioner,

v.

S.L. BURT,

       Respondent,

_____/

Case No. 2:18-cv-12329

Paul D. Borman
United States District Judge

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Johnnie Tyrell Johnson, Jr., ("Petitioner"), confined at the Muskegon Correctional Facility in Muskegon, Michigan, filed a petition for writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316, possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f. For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

      Petitioner provided a detailed statement of facts in his petition for writ of habeas corpus. Respondent also provided a detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts. The Court

accepts the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008).  Since the facts of this case have been repeated numerous times, they need not be repeated here in their entirety.  Only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner shot and killed the victim Demario Dupree outside of a nightclub in Flint, Michigan.  Damaris Jourdan was sitting in his vehicle with his fiancée outside of the club when he saw petitioner get out of a car.  Petitioner entered the nightclub and stayed for several minutes. Mr. Jourdan observed petitioner leave the club several minutes later and tap on a white car, setting off the car alarm. Petitioner then walked over to the side of the building.  Mr. Jourdan saw the victim come out of the nightclub to stop the car alarm.  As the victim was putting his keys in the car, petitioner shot the victim several times, using both a nine millimeter pistol and an AK-47.  Mr. Jourdan heard between twenty and forty gunshots.  After petitioner shot the victim, he got into his car and left the scene.

Police responded to the scene and attempted to provide emergency medical assistance to the victim, who was rushed to the hospital, where he later died. Police recovered cartridges from the crime scene.  A Michigan Identification Card belonging to petitioner was found at the crime scene by a private citizen and turned

over to the police.  DNA from a hat recovered from the crime scene matched petitioner's DNA.

Petitioner called Erma Jones after the shooting and told her that he had shot the victim to avenge the murder of her brother Dion Smith, also known as Bone Scandless.  Petitioner also asked Ms. Jones to provide him with an alibi by saying that she left the nightclub with petitioner an hour earlier than the shooting.

Dallas Green testified that he had a conversation with petitioner, in which he said that people were accusing petitioner of being involved in the victim's murder. Green testified that petitioner denied any involvement in the murder. The prosecutor impeached Green's trial testimony with evidence that Green previously told police that petitioner was silent in response to Green's comments as opposed to stating a denial.

Rajon Jamison had made statements to the police, in which he incriminated petitioner.  At trial, however, Mr. Jamison claimed that he no longer remembered making those statements.  The court permitted Sergeant Russ Fries, who had interviewed Mr. Jamison, to testify that Jamison told him that he saw petitioner come out of the nightclub with an AK-47 and shoot the victim.

On May 23, 2012, petitioner was given a polygraph by Special Agent Bradford Beyer of the Federal Bureau of Investigation.  After failing the polygraph, Agent Beyer told petitioner that he thought Johnson killed the victim.

3

Petitioner responded by saying, "look Brad, everything you're saying is right on. Everything you're saying is accurate. But my attorney told me not to make any statements and I can't say anything that's gonna incriminate myself, and you know, I've got to protect myself legally."

Petitioner was convicted by a jury in the Genesee County Circuit Court. The conviction was affirmed. *People v. Johnson*, No. 313112, 2014 WL 1051665 (Mich. Ct. App. Mar. 18, 2014); *lv. den.* 497 Mich. 855, 852 N.W. 2d 621 (2014).

Petitioner filed a petition for writ of habeas corpus, which was dismissed without prejudice on petitioner's own motion so that he could exhaust additional claims with the state courts. *Johnson v. Stoddard,* No. 14-14770 (E.D. Mich. Oct. 14, 2015).

Petitioner filed a post-conviction motion for relief from judgment and a supplemental motion, which was denied. *People v. Johnson,* No. 11-029033-FC (Genesee Cty.Cir.Ct., May 1, 2017). [1] The Michigan appellate courts denied petitioner leave to appeal. *People v. Johnson,* No. 340950 (Mich.Ct.App. May 10,

---

[1] Petitioner filed the current petition while he was appealing the denial of his post-conviction motion. The petition was held in abeyance during the pendency of his post-conviction appeal. *Johnson v. Chapman*, No. 2:18-CV-12329, 2018 WL 4235088 (E.D. Mich. Sept. 6, 2018).  This Court subsequently lifted the stay, amended the caption, and permitted petitioner to file a supplemental petition. *Johnson v. Burt*, No. 2:18-CV-12329, 2019 WL 2433491 (E.D. Mich. June 11, 2019).

2018); *lv. den.* 503 Mich. 946, 922 N.W. 2d 121 (2019); *reconsideration den.* 503 Mich. 1039, 927 N.W. 2d 222 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was Petitioner denied his right to present a defense and his right to compulsory process by trial court's denial of his request to add a crucial witness.

II. Did the trial court violate Petitioner's due process rights by admitting evidence that Petitioner failed to deny shooting the decedent where his alleged failure to do so was: (A) pretrial silence protection by the constitutional privilege against self-incrimination; (B) unfairly prejudice and not probative of guilt; and (C) silence in the face of an accusation which is inadmissible in a criminal case under Michigan law.

III. Was Petitioner denied the effective assistance of counsel: (A) when counsel abandon him to police interrogation during which he made incriminating statements (B) fail to investigate crucial witness and present crucial impeachment evidence.

IV. Did prosecutorial misconduct deprive the Petitioner of his right to due process and render the trial unfair; when the prosecutor vouched for two of the prosecution witnesses credibility.

V. Was Petitioner denied his constitutional rights to due process, and his right to fair trial: (A) when the prosecutor introduced evidence of the Defendant taking a polygraph test and questions asked during polygraph test, and (B) by the trial court admitting the testimony of polygraph examiner Special Agent Bradley Beyer regarding post-polygraph statements by Petitioner.

VI. Did the trial court abuse its discretion and commit a clear error of law by failing to analyze Defendant's claim of actual innocence under the correct standard?

VII. Was Appellant Johnson denied his state and federal constitutional right to a fair trial when the prosecution knowingly presented and failed to correct false and perjury testimony and did the trial court commit clear error of law by not granting Appellant's breif [sic]?

VIII. Was Appellant denied a fair trial when the trial [sic] prevented trial counsel from adequately crossexamining a key witness about other deaths and motives for the murder, and did the trial court commit a clear error by not granting Appellant's relief?

IX. Was Appellant denied effective assistance of counsel when trial counsel (A) failed to impeach the credibility of a prosecutor's key witness with known false testimony (B) failed to object (C) direct appeal counsel failed to raise crucial issues that would have been outcome determinative as well failing to investigate?

X. Was Appellant denied a fair trial when post polygraph statements were used against Appellant at trial in violation of *Edwards v. Arizona* and did the trial court commit clear error of law by not granting relief?

XI. Was Appellant denied a fair trial when improper jury instructions was given concerning elements for 1st degree murder and did the trial court commit a clear error of law by not granting Appellant relief?

XII. Was Appellant conviction of 1st degree murder a violation of due process where there is insufficient evidence absent the false testimony of state's key witnesses and did the trial court commit clear error by not granting relief?

XIII. Was Appellant denied a fair trial when the trial court permitted Detective Fries to quote vast portions of hearsay to the jury under the ruse of impeaching Rajohn Jamison's out of court statement and did the trial court commit clear error by not granting relief?

XIV. Did the trial court abuse its discretion and commit a clear error of law when it allowed the state to file untimely and vexatious pleadings in response to Defendant's motion for relief from judgement [sic]? [2]

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

---

[2] Respondent addresses petitioner's sixth through fourteenth claims in their answer, but asks this Court to rely on the answer filed in petitioner's first habeas petition which responded to the merits of petitioner's first through fifth claims. (ECF No. 12, PageID. 134).  This Court reviewed this answer and has considered it in addressing the merits of the first five claims. See Case No. 14-14770 (ECF No. 8).

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. DISCUSSION

### A. Claim # 1.  The right to present a defense claim.

Petitioner first argues that he was denied his right to present a defense when the trial judge refused to permit defense counsel to add Chavez Ross as a defense witness on the first day of trial.

The Michigan Court of Appeals rejected petitioner's claim:

MCR 6.201(a)(1) requires that parties disclose their witness lists no later than 28 days before trial. Because Ross was not even mentioned by defendant until the first day of trial, defendant clearly did not comply with this rule nor did he provide any reason for the delay. Thus, the trial

court's denial of defendant's request to add Ross as a witness on the first day of trial was not an abuse of discretion on this basis alone.

Moreover, defendant failed to demonstrate how Ross's testimony would have been relevant. The record is scant on any details about Ross, other than the fact that he supposedly spoke with Damaris Jourdan, a prosecution witness, about Jourdan's testimony. Defendant asserts that Ross's testimony would have cast "reasonable doubt" on Jourdan's testimony and that Jourdan did not come forward until receiving a reduced sentence on unrelated charges. First, Jourdan's reduced sentence and motivation for testifying were brought out at trial on direct and cross-examination. Second, defendant made almost no offer of proof that Ross ever actually spoke with Jourdan. Defendant also did not proffer what Ross would have said about Jourdan's testimony. Third, even when given the opportunity to address the issue of Ross with Jourdan on cross-examination, defendant declined to do so. Lastly, even if we assume that Ross would have testified that Jourdan fabricated his testimony in exchange for leniency, that testimony would have been merely duplicative. Defense witness Darryl Rodgers testified that Jourdan and others were "plotting" against defendant by fabricating testimony to obtain early release.

*People v. Johnson*, 2014 WL 1051665, p. 1 (additional internal citation omitted).

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete

defense'")(internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679  (1986)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Sixth Amendment Compulsory Process Clause may be violated by imposing a discovery sanction that entirely excludes the testimony of a material defense witness, *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988), but the Compulsory Process Clause does not create an absolute bar to the preclusion of the

testimony of a defense witness by the court as a sanction for violating a discovery rule. *Id.* at 610. While recognizing the constitutional significance of a criminal defendant's ability to present favorable evidence, the Supreme Court in *Taylor* also emphasized a state's interest in conducting orderly criminal trials and in creating enforceable rules for identifying and presenting evidence. *Taylor*, 484 U.S. at 410-11. Although the Supreme Court declined to "draft a comprehensive set of standards to guide the exercise" of a trial court's discretion to sanction a party for failing to comply with discovery rules, the Supreme Court identified several factors that would be relevant in determining whether a discovery sanction would be constitutional. *Id.* at 414-15. These factors included a defendant's right to present exculpatory evidence, the integrity of the adversarial system, the interest in administering justice fairly and efficiently, potential prejudice to the truth-seeking role of criminal trials, the reasons for failure to comply with discovery rules, and the relative ease of compliance with the rules. *Id.* at 414-16. The Supreme Court emphasized that there is "something suspect about a defense witness who is not identified until after the 11th hour has passed." *Id.* at 414.

Given that Mr. Ross's proposed testimony allegedly went to the crux of petitioner's defense, it is inexplicable why petitioner did not disclose his name to the prosecutor prior to trial in a timely fashion in compliance with the court's discovery order, thus, the judge's decision to exclude Mr. Ross from testifying was

not an abuse of discretion. *See U.S. v. Sheldon,* 223 F. App'x. 478, 484 (6th Cir.

2007).  Stated differently, given the fact that the importance of Mr. Ross's

proposed testimony to the defense should have been apparent when defense

counsel learned about him prior to trial, counsel could easily have included Ross's

name in his witness list but chose not to do so.  Accordingly, the exclusion of this

witness from testifying was not contrary to, or an unreasonable application of,

clearly established federal law. *See Johnson v. Wolfe*, 44 F. App'x. 702, 716 (6th

Cir. 2002).

In any event, petitioner was not completely precluded from presenting

evidence to impeach Mr. Jourdan's credibility or to suggest a motive on his part to

testify falsely. Mr. Jourdan admitted on direct and cross-examination that he had

been offered a plea and sentence agreement in exchange for his testimony.

Petitioner's own witness Darryl Rodgers testified that Mr. Jourdan and others were

plotting to fabricate testimony against petitioner to obtain an early release. The trial

court's refusal to allow Mr. Ross to testify was not so egregious that it effectively

denied petitioner a fair trial, because petitioner was not completely barred from

presenting evidence that impeached Mr. Jourdan's credibility.  *See Fleming v.

Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009); *See also Perkins v. McKee,* 411 F.

App'x. 822, 826 (6th Cir. 2011)(exclusion of defense witness as sanction for

violation of discovery order did not deprive petitioner of right to present a defense,

when excluded defense witness' testimony was cumulative of evidence presented at trial). With the quantum of evidence on the defense theory in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009)(citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).

Finally, even if the state trial court's evidentiary ruling excluding Mr. Ross from testifying violated petitioner's constitutional right to present a defense, that alleged constitutional error was harmless, because there is no indication that barring this witness from testifying had a substantial and injurious effect on the jury's finding that petitioner was guilty, in light of the compelling evidence of petitioner's guilt. *See Fleming v. Metrish*, 556 F. 3d at 536-37. Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The pre-arrest silence claim.**

Petitioner next contends that he was denied a fair trial by the admission of references to his remaining silent after being questioned by his friend Dallas Green about the murder.

Petitioner's claim fails for two reasons.

First, the Supreme Court has held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his or her constitutional right to remain silent. *Salinas v.*

13

*Texas*, 570 U.S. 178, 183-84, 191 (2013); *See also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014). The references to petitioner remaining silent in response to Dallas Green's question were permissible because this happened before petitioner had been arrested or invoked his constitutional right to remain silent.

Secondly, the prosecution's use of petitioner's silence was permissible because it occurred in the context of an informal exchange with a friend or acquaintance who was a private citizen, as opposed to the invocation of silence during a police interrogation. *United States v. Tab*, 259 F. App'x. 684, 697 (6th Cir. 2007); *United States v. Henry*, 206 F. App'x. 452, 457 (6th Cir. 2006). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3.  Ineffective assistance of trial counsel claims.

Petitioner next contends he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

14

Petitioner initially argues that trial counsel was ineffective for failing to accompany him to the polygraph examination.

The Michigan Court of Appeals concluded that petitioner was not denied the assistance of counsel at the polygraph examination and subsequent interrogation, because petitioner waived his right to have counsel present during the polygraph examination. *People v. Johnson*, 2014 WL 1051665, p. 4. The Michigan Court of Appeals further ruled that "there is no evidence in the record to support a conclusion that counsel's decision to allow defendant to sign the waiver to take the polygraph examination was not either something the two discussed or was part of an acceptable trial strategy. Thus, counsel's performance did not fall below an objective standard of reasonableness." *Id.*, p. 5.

Once an accused has expressed his desire to deal with the police only through counsel, he is not to be subjected to further interrogation until counsel has been made available to him, unless the accused initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

In *Wyrick v. Fields,* 459 U.S. 42 (1982), however, the U.S. Supreme Court held that once a criminal defendant, who had an attorney, made a voluntary, knowing and intelligent waiver of his right to have counsel present at a polygraph examination, and it was clear that the defendant understood his right to counsel and was aware of his power to stop questioning at any time or to confer with his

attorney at any time, the federal constitution did not require that the police advise the defendant of his rights again before questioning him at the same interrogation about the results of the polygraph examination.  In so ruling, the Supreme Court ruled that by requesting a polygraph examination from the police, the defendant in *Wyrick* had initiated the interrogation with the police and had therefore waived not only his right to be free of any contact with law enforcement authorities in the absence of an attorney, but also his right to be free of interrogation about the crime of which he was suspected. *Id.* at 47.  The Supreme Court further concluded that the defendant validly waived his right to have counsel present at any post-polygraph questioning, "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.*

In the present case, petitioner was advised of his *Miranda* rights and his polygraph examination rights prior to the polygraph examination.  By agreeing to take the polygraph examination, petitioner consented to questioning by the police and waived not only his right to be free from contact with law enforcement authorities in the absence of his attorney, but also his right to be free of interrogation about the crimes that he was suspected of committing. *See United States v. Bad Hand,* 926 F. Supp. 891, 903 (D.S.D. 1996).  It is plain from the record that petitioner fully understood and expressly waived his constitutional

rights prior to the polygraph examination and the subsequent post-polygraph interview. Petitioner therefore voluntarily, intelligently, knowingly and intentionally gave up both his Fifth and Sixth Amendment rights during the polygraph examination and subsequent interview. *Id.*

Moreover, in "cases where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial[,]" a harmless error analysis applies. *See Mitzel v. Tate,* 267 F. 3d 524, 534 (6th Cir. 2001)(quoting *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)). In this case, assuming that petitioner's Sixth Amendment rights were violated by counsel's absence from the polygraph examination, habeas relief is unavailable unless there is more than a reasonable possibility that the admission of petitioner's post-polygraph confession contributed to the jury's guilty verdict. *Id.* In light of the overwhelming evidence of petitioner's guilt, this Court does not believe that there is anything more than a possibility that the admission of petitioner's post-polygraph confession contributed to the jury's decision to convict. *Id.* at 535.

Petitioner next contends that trial counsel should have investigated and called Nikkia Larry, whom petitioner claims would have contradicted Mr. Jourdan's testimony that she was with him when Jourdan witnessed the shooting. The Michigan Court of Appeals rejected this claim, in part, because petitioner failed to provide any affidavit or other evidence that Ms. Larry would have

testified. *People v. Johnson*, 2014 WL 1051665, p. 5.  Petitioner has not provided an affidavit from Ms. Larry to this Court concerning her willingness to testify.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Ms. Larry would have testified or what the content of her testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. Larry to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007).

Petitioner next contends that trial counsel was ineffective for failing to investigate Mr. Jourdan's van to determine when it was actually purchased by Mr. Jourdan.  Petitioner notes that Mr. Jourdan testified at the preliminary examination that he purchased the van on July 4, 2009, but since the murder occurred on June

14, 2009, it would have been impossible for Jourdan to be driving the van that night, thus calling into question his credibility.

As mentioned when addressing petitioner's first claim, *supra,* Mr. Jourdan admitted on direct and cross-examination that he was testifying in exchange for a plea and sentencing agreement.  Petitioner presented a defense witness who claimed that Mr. Jourdan had indicated an intent to fabricate testimony against petitioner in exchange for an early release.  At trial, Mr. Jourdan admitted on cross-examination that Ms. Larry was the mother of his children, that he was living with her, and that he did not want her involved in petitioner's trial.  Defense counsel "strongly implied that Jourdan told Larry not to testify because she would not corroborate his story." *Johnson,* 2014 WL 1051665, p. 5.

A defense counsel also has no duty to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d 359, 381-82 (6th Cir. 2010).  Jourdan could have been mistaken about the date that he purchased the van, thus, impeaching him with this inconsistency would have been of marginal value.  Moreover, petitioner was not prejudiced by counsel's failure to impeach Mr. Jourdan about him testifying that he purchased the van after the date of the murder because it was cumulative of other evidence in support of petitioner's claim that Mr. Jourdan had testified falsely and was otherwise not credible. *Wong v. Belmontes,* 558 U.S. 15, 22-23 (2009). The jury had significant

evidence presented to it that Mr. Jourdan's credibility was questionable as well as a potential motive for him to fabricate evidence against petitioner.  Because the jury was "well acquainted" with evidence that would have supported petitioner's claim that Mr. Jourdan fabricated his testimony, additional evidence in support of petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Petitioner next contends that trial counsel was ineffective for failing to pursue a defense that Cleophas Gibbs was the actual shooter.  The Michigan Court of Appeals rejected this claim:

> At trial, an investigating detective testified that the police determined Gibbs was not a viable suspect. No evidence exists in the record to suggest that an investigation into Gibbs would have created a substantial defense for defendant. Thus, defendant's trial counsel's failure to investigate Gibbs did not fall below an objective standard of reasonableness.

*People v. Johnson,* 2014 WL 1051665, p. 6.

Since there was little or no evidence linking Mr. Gibbs to the murder, trial counsel was not ineffective in failing to pursue a third party culpability defense. *See e.g. Robins v. Fortner,* 698 F. 3d 317, 331 (6th Cir. 2012).

**D. Claim # 4.  The prosecutorial misconduct claim.**

Petitioner next contends he was denied a fair trial because the prosecutor committed misconduct by vouching for the witnesses.

The Michigan Court of Appeals rejected the claim:

Defendant takes issue with the prosecutor's statement that prosecution witness Damaris Jourdan, who testified that he witnessed defendant shoot Dupree, "testified and testified truthfully." However, Jourdan testified at trial that he was telling the truth and the prosecutor did not imply that he had any special knowledge of Jourdan's veracity. Accordingly, the prosecutor's statement did not constitute misconduct.

Similarly, defendant contends that the prosecutor impermissibly vouched for a witness's credibility when she stated that Erma Jones "was coming forward and telling the truth because it was the right thing to do." Jones testified that following a discussion with defendant, who urged her to tell the police that defendant left with Jones on the date of the murder, she lied to the police about defendant's whereabouts on the night of the murder. Like Jourdan, Jones then testified that she was being truthful at trial. Accordingly, because the prosecutor argued from the testimony in evidence and did not imply any special knowledge of Jones's truthfulness, the statement did not constitute misconduct.

Further, even if the prosecutor's statements were misconduct, the trial court instructed the jury that the lawyers' statements and arguments were not evidence. And, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." Thus, any potential misconduct during the prosecutor's closing arguments was cured by instruction.

*People v. Johnson,* 2014 WL 1051665, p. 3 (internal citation omitted).

A prosecutor's improper comments will be held to violate a criminal

defendant's constitutional rights only if they "'so infected the trial with unfairness

as to make the resulting conviction a denial of due process.'" *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416

U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for

habeas relief only if the conduct was so egregious as to render the entire trial

fundamentally unfair based on the totality of the circumstances. *Donnelly v.*

*DeChristoforo*, 416 U.S. at 643-45.  To obtain habeas relief on a prosecutorial

misconduct claim, a habeas petitioner must show that the state court's rejection of

his prosecutorial misconduct claim "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting

*Harrington*, 562 U.S. at 103).

A prosecutor may not express a personal opinion concerning the guilt of a

defendant or the credibility of trial witnesses, because such personal assurances of

guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the

legitimate advocates' role by improperly inviting the jurors to convict the

defendant on a basis other than a neutral independent assessment of the record

proof."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999)(internal citations

omitted).  However, a prosecutor is free to argue that the jury should arrive at a

particular conclusion based upon the record evidence. *Id.*  The test for improper

vouching for a witness is whether the jury could reasonably believe that the

prosecutor was indicating a personal belief in the witness' credibility. *United*

*States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper

vouching involves either blunt comments, or comments that imply that the

prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x 627, 632, n.3 (6th Cir. 2010).  Even on direct appeal from a federal conviction, to constitute reversible error, a prosecutor's alleged misconduct of arguing his or her personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated.  An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006).  Secondly, the prosecutor's remarks did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by these brief statements. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001).  Lastly, the

jury was instructed that the lawyers' statements and arguments were not evidence. This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537.  The Court rejects petitioner's fourth claim.

### E.  Claim # 5.  The polygraph evidence claim.

Petitioner next argues that trial court erred by admitting evidence that Bradford J. Beyer, a special agent with the Federal Bureau of Investigation, had polygraph expert credentials. Petitioner claims that this evidence suggested that petitioner had taken and failed a polygraph, even though Beyer never testified that petitioner had taken a polygraph or had failed the test.

The Supreme Court has never held that testimony or evidence which implies the results of a polygraph or similar test renders a criminal defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005).  To grant habeas relief to petitioner "would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests." *Id.,* at 478.  Because no Supreme Court precedent demands this result, the Michigan Court of Appeals' rejection of petitioner's claim was not unreasonable under 28 U.S.C. § 2254(d). *Id.*

Moreover, the Sixth Circuit on direct review of federal criminal convictions has "refused to impose a *per se* prohibition against polygraph evidence, and the mere mention of the words 'polygraph examination' does not entitle a defendant to a new trial." *United States v. Odom*, 13 F. 3d 949, 957 (6th Cir. 1994).

The Michigan Court of Appeals rejected petitioner's claim because "there was no mention of the word "polygraph" or implication that defendant took a polygraph examination in Beyer's testimony. Beyer certainly did not testify to any *results* of any polygraph taken by defendant." *People v. Johnson,* 2014 WL 1051665, p. 3 (emphasis original).  Because there was no testimony that petitioner had taken or failed a polygraph, petitioner is not entitled to habeas relief.

### E. Claim # 6. The actual innocence claim.

Petitioner next claims that he is entitled to habeas relief based on his claim that he has newly discovered evidence that he is actually innocent.

Petitioner in his post-conviction motion for relief from judgment presented an affidavit signed by fellow inmate Jawaunte Balknight at the Michigan Reformatory Facility in Ionia, Michigan on August 24, 2016, almost seven years after the murder. Mr. Balknight stated in an affidavit that he was seated in his car in the bakery parking lot when he looked up and saw the victim  walk directly in front of his car and walk "toward a white box shape Caprice with white rims on it." He then saw another man "with a muslim like beard and braid in his hair coming

25

up behind Rio [the victim]."  Balknight describes this person as "about 160 pounds and 5ft 6 in tall, wearing a Brown jacket with fur around the hood and Brown jeans on." *Id.* [sic].  Although he does not know who this person was, Balknight could tell from looking at petitioner in prison, apparently 7 years later in 2016, that petitioner was not the suspect. Mr. Balknight states that he immediately left the scene because he did not want to be called a snitch. *Id.* Mr. Balknight now has agreed to come forward to testify as to his detailed description of the shooter and assert that it was not petitioner. [3]

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").  Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-

---

[3] See Affidavit of Jawaunte Balknight, attached as Exhibit A to petitioner's post-conviction motion for relief from judgment. (ECF No. 13-26, PageID. 1616-18).

55 (6th Cir. 2007)(collecting cases).  Petitioner is therefore is not entitled to relief for his sixth claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x. 709, 711 (6th Cir. 2007).

In any event, a long-delayed affidavit like Mr. Balknight's which seeks to exonerate petitioner and shift the blame for the crime to another person is "treated with a fair degree of skepticism." *Herrera v. Collins,* 506 U.S. at 423.

Furthermore, in determining whether a habeas petitioner has satisfied the miscarriage of justice standard so as to be permitted to file a successive habeas petition, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup v. Delo,* 513 U.S. 298, 332 (1995).   Mr. Balknight's credibility is suspect because he himself was an inmate serving a prison sentence for several counts of theft and retail fraud when he signed the affidavit. [4]  Affidavits from fellow inmates that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence. *See Milton v. Secretary, Dep't Of Corr.,* 347 F. App'x. 528, 531-32 (11th Cir. 2009).  The fact that Mr. Balknight did not come forward in a timely manner, when he claimed that they knew that petitioner was wrongly

_____

[4]  Mr. Balknight has now been discharged from his sentence as of July 18, 2018. The Court obtained this information from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of. *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004).

convicted undermines his credibility, particularly when there is also no indication that Mr. Balknight ever went to the police with his allegedly exculpatory information. *See Ashmon v. Davis*, 508 F. App'x. 486, 488 (6th Cir. 2012). Petitioner's freestanding actual innocence claim, based solely on an affidavit that was executed almost seven years after trial and was offered without adequate explanation as to the delay, does not entitle him to habeas relief. *Legrone v. Birkett*, 571 F. App'x. 417, 421 (6th Cir. 2014).  Nor would it be reliable evidence of actual innocence to excuse his procedural default, *infra*.

### F.  Claim # 12.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to establish his identity as the shooter, so as to support his conviction.  Petitioner raised this claim on post-conviction review.  The judge denied this claim on the merits. *People v. Johnson*, No. 11-029033-FC-5, p. 17. [5]

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v.*

---

[5] ECF No. 13-31, PageID. 1767.

*Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, Mr. Jourdan positively identified petitioner at trial as the assailant. The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted). Mr. Jourdan unequivocally identified petitioner at trial as being the person who shot and killed Mr. Dupree. This evidence was sufficient to support petitioner's convictions. *See Brown v. Burt,* 65 F. App'x. 939, 944 (6th Cir. 2003).

30

Although petitioner attacks the quality of the eyewitness identification, he is basically asking this Court to re-weigh the testimony and credibility of the evidence, which this Court cannot do. *See United States v. Campbell*, 18 F. App'x. 355, 358 (6th Cir. 2001)(quoting *United States v. Tipton*, 11 F.3d 602, 609 (6th Cir. 1993)).  This portion of petitioner's insufficiency of evidence claim rests on an allegation of the witness's credibility, which is the province of the jury.  *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

Ms. Jones testified that petitioner told her that he had shot the victim.  "[A]n admission by the accused identifying himself (or herself) as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F. 2d 490, 494 (8th Cir. 1979); *See Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)(petitioner's identity as murderer supported in part by evidence that he confessed several times to murdering sister); *Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008)(evidence sufficient to establish petitioner's identity as armed robber where his admissions placed him at the location of the crime); *Hatchett v. Withrow*, 185 F. Supp. 2d 753, 759 (E.D. Mich. 2002)(petitioner's identity as perpetrator of crime supported in part by his detailed confession to the crime).

Petitioner argues that there was insufficient evidence to convict him because the police did not recover corroborating physical evidence to convict. The Sixth

Circuit notes that the "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x.  871, 882 (6th Cir. 2016). In any event, a hat containing petitioner's DNA was recovered from the murder scene, as was his identification card.

Because there were multiple pieces of evidence, including eyewitness testimony, to establish the petitioner's identity as the perpetrator of the murder, the state trial court on post-conviction review did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F. 3d 908, 919-21 (6th Cir. 2012).

### G. Petitioner's remaining claims are procedurally defaulted.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51

32

(1991).  If petitioner fails to show cause for his procedural default, it is

unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S.

527, 533 (1986).  However, in an extraordinary case, where a constitutional error

has probably resulted in the conviction of one who is actually innocent, a federal

court may consider the constitutional claims presented even in the absence of a

showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80

(1986).  To be credible, such a claim of innocence requires a petitioner to support

the allegations of constitutional error with new reliable evidence that was not

presented at trial. *Schlup v. Delo*, 513 U.S. at 324.

The Michigan Supreme Court rejected petitioner's post-conviction appeal on

the ground that "the defendant has failed to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Johnson,* 503 Mich. at 946.

The Michigan Court of Appeals denied petitioner's post-conviction appeal in a

form order "because the defendant failed to establish that the trial court erred in

denying the motion for relief from judgment."  *People v. Johnson,* No. 340950

(Mich.Ct.App. May 10, 2018).  These orders, however, did not refer to subsection

(D)(3) nor did they mention petitioner's failure to raise his claims on his direct

appeal as their rationale for rejecting his post-conviction appeals.  Because the

form orders in this case are ambiguous as to whether they refer to procedural

default or a denial of post-conviction relief on the merits, the orders are

unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The Genesee County Circuit Court judge, with the exception of petitioner's sufficiency of evidence and actual innocence claims, *supra,* rejected petitioner's other post-conviction claims by indicating several times that petitioner was not entitled to relief on his claims because he failed to show cause and prejudice for failing to raise the issues on his direct appeal, as required by M.C.R. 6.508(D)(3). See *People v. Johnson*, No. 11-029033-FC-5, p. 3, 13-19, 37. [6]  Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007). [7]

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.

---

[6] The judge's opinion can be found at ECF No. 13-31, PageID. 1751-87.  The pages of the opinion dealing with the actual default are found at PageID. 1753, 1763-69, 1787.

[7] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291.  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

Petitioner, however, has not shown that appellate counsel was ineffective.  It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective

appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a twenty page appellate brief which raised three claims, which are basically the first three claims raised by petitioner in his petition.[8] Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of

---

[8] *See* Defendant-Appellant's Brief on Appeal, ECF No. 13-32, PageID.1807-1832.

the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010).

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a supplemental Standard 4 *pro per* brief on his appeal of right before the Michigan Court of Appeals. [9] Although petitioner raised several claims, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been

---

[9] See Appellant's Supplemental Brief, ECF 13-32, PageID. 1869-85. Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

raised by his appellate counsel, yet failed to include what make up his seventh

through eleventh and thirteenth and fourteenth claims in his supplemental brief.

Petitioner has offered this Court no explanation why he failed to raise these

claims in his supplemental *pro per* brief that he filed as part of his direct appeal.

Because petitioner has offered no reasons for his failure to include these claims in

his supplemental *pro per* brief on his direct appeal, he has failed to establish cause

to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d

817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his

failure to raise on direct appeal his claim of ineffective assistance of trial counsel,

where petitioner had filed two briefs on his own behalf raising other claims that

had not been asserted by his appellate counsel, but he offered no explanation for

his failure to raise the ineffective assistance claim at the same time).

In the present case, petitioner has failed to show cause to excuse his default.

Because petitioner has not demonstrated any cause for his procedural default, it is

unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S.

at 533.  Additionally, petitioner has not presented any new reliable evidence to

support any assertion of innocence which would allow this court to consider these

claims as a ground for a writ of habeas corpus in spite of the procedural default.

Petitioner's sufficiency of evidence claim [Claim # 12] is insufficient to invoke

the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,*

276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, petitioner has failed to show that his post-conviction claims have any merit.  Petitioner is not entitled to habeas relief on his remaining claims.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v.*

*McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.   Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**IV.  CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ

of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave

to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: July 6, 2020